UNITED STATES DISTRICT COURT
for the
DISTRICT OF NEW HAMPSHIRE

Seth Bader,
        Plaintiff,

v.                                                          Civil No. 11-CV-43-SM

William Wrenn, Commissioner, NH Department
        of Corrections, in his official capacity,
                Defendant.

## Motion to Re-Open the Preliminary Injunction Hearing

Plaintiff Seth Bader, through counsel, respectfully moves this court to re-open the preliminary injunction hearing to hear from several witnesses whose testimony became important and relevant in light of the Magistrate's proposed findings of fact.

In support of this motion, Bader represents as follows:

1.         The Magistrate proposed 14 findings of fact and law. Relevant to this motion are proposed findings 5 and 11:

> 5. On December 3, 2010, Bader was transferred to NCF from the NHSP by DOC officials, *due to a suspicion that Bader was developing a relationship that was too comfortable with certain staff members at the NHSP that might present problems to institutional security in the future if left unchecked.*

Report at 21-22 (emphasis added).

> 11. Bader's transfer to NCF *was motivated by security concerns*, and not by any effort to separate Bader from any religious exercise.

Report at 23 (emphasis added).

2. Bader objected to these proposed findings in part because they are based upon facts that the Magistrate said she would not rely upon, causing Bader to forego calling witnesses who would conclusively disprove these proposed findings. The "suspicion" of "security concerns" has no evidentiary basis, and the Magistrate found facts that tend to support this unsubstantiated suspicion despite a representation during the hearing that she would not consider those facts.

3. The Magistrate's opening paragraph states, "the Court's recitation of the facts does not resolve any difference in the parties' factual assertions, but instead, identifies the facts relevant on the legal question presented." Report at 2. This statement is incorrect as to the important factual question concerning DOC's stated reason for Bader's transfer from Concord to Berlin.

4. The Magistrate begins this section by accurately reciting that Bader was completely exonerated of the disciplinary charge he received for possessing certain computer files at his prison work station. The disciplinary charge "was filed without prejudice, and was ultimately dismissed," Report at 6, because Bader was not guilty of any misconduct. He possessed the computer files in question with the permission and knowledge of his civilian bosses. No evidence presented at the hearing contested this.

5. The Magistrate then strayed into the testimony of Major Fouts.

>Major Fouts testified at the hearing. Fouts spoke with Don Tanguay, the individual in charge of the NHSP [Concord] education department. After speaking with Tanguay, Fouts was concerned that Bader might be taking liberties in the education department, as well as in Corrections Industries, that pointed to the potential for future problems with Bader at the NHSP.
>
>Specifically, Fouts testified that corrections officers are trained to look out for inmate behavior that might be designed to set officers up by getting an officer to bend rules, and slowly pushing the officer to exceed the bounds of appropriate behavior. Fouts stated this can be a problem because those rule violations by jail personnel become ammunition the inmate can use later to extort favors or other benefits from officers who have previously bent the rules.
>
>Fouts was concerned that Bader's receipt of music CDs, possession of floppy disks containing data not directly related to work, both with staff blessing, and Bader's actions in the education department, might indicate that Bader was developing relationships with staff members at NHSP that were too comfortable. Fouts was concerned that Bader might, in the future, attempt to exploit those relationships to his own advantage, and to the detriment of institutional security. To fend off the potential for such harm, Fouts decided to move Bader to NCF [Berlin].

Report at 6-7.

6.       Bader's objection to the recitation of these "facts" is that they are false, they were directly contradicted by Bader, and that Bader relied upon the Magistrate's indication that she would not make any findings of fact relying upon the surprise hearsay-based testimony of Fouts's conversation with Tanguay (who did not testify). The evidence was a surprise to Bader because Fouts' alleged conversation with Tanguay was not contained in Fouts' affidavit that defendant filed prior to the hearing, and the conversation does not appear in any other contemporaneous

records related to this matter.  Bader timely objected to the Tanguay evidence.

7. The Magistrate nonetheless relied on the Tanguay evidence as support for DOC's decision to move Bader for a corrections related reason – the unsubstantiated and false fear that Bader had "relationships" with staff that he may, "in the future" try to exploit.  Accepting this false reason for Bader's transfer casts a prejudicial pall over Bader's claim and it should either be stricken from any further analysis of this claim, or Bader should be given the opportunity to present admissible evidence proving Fouts' testimony false.

8. During the hearing, Bader's direct testimony did not involve Mr. Tanguay, Bader's boss's boss at the education department where Bader had worked for many years as a teacher and for which Bader still occasionally taught a class. During Fouts's testimony, however, Fouts said he talked to Mr. Tanguay, that Tanguay had a concern that Bader used his status as a teacher, with its access to computers in the education department, to possibly provide improper legal assistance to inmates, and that Tanguay had spoken to Bader about this problem.[1]

---

[1] Bader offered rebuttal testimony saying that Tanguay was not Bader's direct supervisor in the education department, that Tanguay never reprimanded or "spoke to" Bader about abusing his position or access to computers to provide legal help to inmates, that Bader's immediate supervisor, Thomas Forsely, *jokingly* and *humorously* spoke to Bader about using too much toner and paper in repeatedly printing his lesson plan, to get it perfect as was Bader's inclination, that the floppy disc with Bader's material was kept in Forsley's office, that the printer was on Forsley's desk in Forsley's office and was off limits to inmates, that Bader was not even allowed to retrieve what he printed – a staff member would deliver the printed materials to Bader, that Bader did nothing wrong or

9. However, the limited manner in which the Tanguay evidence was presented at the hearing resulted in the Magistrate's factual statements that after speaking with Tanguay, "Fouts was concerned that Bader might be taking liberties in the education department, as well as in Corrections Industries, that pointed to the potential for future problems with Bader" in Concord. Report at 6.

10. Counsel objected. The Magistrate acknowledged that the Tanguay discussion was "not a controlling issue," and agreed that what Tanguay would say under oath was an "unresolved factual issue." Relying on this discussion that the "Tanguay evidence" was essentially put aside as irrelevant and unimportant, counsel withdrew a request to continue the hearing to allow for Tanguay and others related to this surprise issue to testify.[2]

11. Much to Bader's surprise, however, the Magistrate included the improper statement quoted above, which tends to support the Magistrate's proposed findings 5 and 11.

12. Bader now moves to present evidence that would conclusively refute the Major's vague suspicions. Specifically, Bader moves to present the following witnesses who are expected to testify to the following facts had the Magistrate

---

even of concern in the education department, and thus that Fouts's vague suspicions were completely without any factual support.

[2] The statements in quotations are not from the transcript, as one has not been prepared, but reflect Bader's and counsel's best recollections of what was said during this portion of the hearing.

indicated the so-called Tanguay conversation was to be relied upon:

a.  Thomas Forsley is the teacher in charge of Room 10 in the Concord prison's education department and would testify that he has supervised Bader's use of a computer to prepare lesson plans for law classes which Bader taught, that he kept in his possession a floppy disc with those lesson plans, that print-outs of those lesson plans were made on a laser printer on his desk or sometimes another staff member's desk, that he never found non-lesson plan materials on the disc nor in the printer trays, that he never told Bader that Bader was not welcome to continue to work under his supervision, that Bader never tried to persuade him to violate prison rules, and that he never gave Bader a "write up," or disciplinary charge.

b.  Michael Higgins is a history and social studies teacher at the Concord prison's education department and he would testify that from 2004 to 2010 Bader volunteered about twice per year to give presentations, usually about a week long, to some of his classes and occasionally other teachers' classes, that he was satisfied with the quality of Bader's work, that in July 2010 he signed a memorandum authorizing Bader to do prep work on a presentation on First Amendment/free speech issues to be given to his class in the spring or summer of 2011, that he is responsible for college programs at the Concord prison, that he has expressed the opinion that Bader ought to be teaching college classes, that he never told Bader that Bader was not welcome to continue teaching for him, that Bader never tried to persuade him to violate prison rules, and that he never gave Bader a disciplinary charge.

c.  Daniel Tanguay is the supervisor of the Concord prison's education department and would testify that Bader was a volunteer and paid teacher at various times between 1999 and 2010, that Bader was never written up for his activities as a teacher, that in the summer or fall of 2010 he had discussions with Bader at Bader's workplace in the industries office, in the presence of inmate Peterson, regarding Bader's wish to be a paid full-time teacher rather than a volunteer part-time teacher, that on those occasions he told Bader that he hoped around March 2011 to secure authorization from the NH Department of Education to resume the paid full-time employment of inmate teachers including Bader, and that during those conversations he told Bader that CO Dugre, assigned to the Education Department, was opposed to the use of inmate volunteers but that Bader could continue to volunteer because of Bader's long and good track record.

      d.      <u>Charles "Fred" Nichols</u> is the supervisor of the NH Correctional Industries and would testify that Bader was employed by him as a clerk from about July 2009 through December 2010, that he was satisfied with the quality of Bader's work, that it was part of Bader's job to make suggestions as to Correctional Industries' compliance with applicable laws and rules, that based on Bader's work he formed an opinion that Bader is a stickler for doing things by-the-book, that Bader came to work for him in July 2009 as a result of grievances Bader filed in early 2009 regarding what Bader perceived to be an unduly familiar relationship between an inmate and a staff member in another workplace, that Bader never tried to persuade him to violate prison rules , and that he never charged Bader with a rules violation.

13.      Given the unfair and incomplete manner in which the Tanguay evidence was presented, Bader moves to re-open the hearing to present the testimony of the above listed witnesses to substantiate his objection to proposed findings 5 and 11.

14.      Counsel for the defendant objects to the relief sought.

15.      No memorandum of law is necessary as the relief sought is within the discretion of the court.

                                            Respectfully submitted,
                                            Seth Bader,
                                            By his attorney

                                            /s/ Michael J. Sheehan
                                            Michael J. Sheehan, Esq. #6590
                                            3 North Spring Street #101
                                            Concord, NH 03301
                                            (603) 225-5240
                                            msheehan@usa.net

State of New Hampshire
Merrimack, ss.

I certify that today, April 12, 2011, I forwarded a copy of this motion to Danielle Pacik, Esq., via ECF.

                                                /s/ Michael J. Sheehan
                                                Michael J. Sheehan